UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ANTONIO BARROS,** *et al.*,

          **Plaintiffs,**

      **v.**                                      Civil Action No. 13-00669 (TFH)

**JAMES BECK,** *et al.*,

          **Defendants.**

## MEMORANDUM OPINION

Pending before the Court are (1) Defendant James Beck's and Amy Beck's Motion to Dismiss [ECF No. 8] and (2) Plaintiffs' Motion for Leave to File An Amend Complaint [sic] [ECF No. 11]. For the reasons that follow, the Court will grant Defendant James Beck's and Amy Beck's Motion to Dismiss and will grant in part and deny in part Plaintiffs' Motion for Leave to File An Amend Complaint [sic].

### I. DEFENDANT JAMES BECK'S AND AMY BECK'S MOTION TO DISMISS

On June 24, 2013, defendants James Beck and Amy Beck (collectively the "Becks") moved to dismiss the plaintiffs' Complaint on the ground that the Court lacks personal jurisdiction over them.[1] Mem. of P. & A. In Support of Def. James Beck & Amy Beck's Mot. to Dismiss ¶¶ 1, 2 [ECF No. 8]. Citing the District of Columbia's long-arm statute, which is codified at D.C. Code §§ 13-422 and 13-423, the Becks contend that the plaintiffs failed to

---

[1] Although the Becks' motion to dismiss does not expressly say so, the Court infers that dismissal is sought pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, which permits a defendant to assert lack of personal jurisdiction as a defense.

demonstrate that the Becks have minimal contacts with the District of Columbia sufficient to establish personal jurisdiction. Mem. of P. & A. In Support of Def. James Beck & Amy Beck's Mot. to Dismiss ¶¶ 2-4. The plaintiffs counter by asserting that diversity of citizenship exists between the parties and "[t]he District of Columbia or any other state couldn't deny a Plaintiff who demonstrates diversity between two citizens of different states the opportunity to have their case redress [sic] by a Federal court." Pls.' Opp'n Br. 6-7.

A. <u>Factual Allegations</u>

Both parties submitted opposing statements of facts, *see* Mem. of P. & A. In Support of Def. James Beck & Amy Beck's Mot. to Dismiss 1 [ECF No. 8] and Pls.' Material Facts In Dispute ¶¶ 1-11 [ECF No. 10], even though the local rules of this court only require such a submission when a motion for summary judgment is filed, *see* LCvR 7(h). While it generally is helpful to alert the Court about disputed facts, when a court is considering a motion to dismiss for lack of personal jurisdiction, and does not hold an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction and the facts will be construed in the light most favorable to the plaintiff, although the court may consider factual assertions made by the defendant that remain uncontroverted. *See*, *e.g. In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013), *petition for cert. filed*, 82 U.S.L.W. 3107 (Aug. 26, 20130 (No. 12A1194, 13-271); *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012); *Doe v. Nat'l Med. Svs.*, 974 F.2d 143, 145 (10th Cir. 1992).

According to the Complaint, Antonio Barros and Jeffery Styles (the "plaintiffs") suffered injuries when their vehicle was struck by a minivan that was being driven by James Beck, who is named as a defendant along with Amy Beck and Government Employees Insurance Company,

Inc. ("GEICO"). Complaint ¶ 2. The Complaint asserts that the collision occurred in the Commonwealth of Virginia, that James Beck is a resident of Virginia, and that James Beck was driving negligently and in violation of Virginia laws. *Id.* at ¶¶ 2, 4, 15-18. Although the Complaint also names Amy Beck as a defendant, *id.* at ¶ 4, it fails to state any allegations against her. The Complaint does, however, state that Amy Beck is married to James Beck and that she is also a resident of Virginia. *Id.* With respect to GEICO, the Complaint appears to be alleging that GEICO breached an uninsured/underinsured motorist coverage provision contained in plaintiff Antonio Barros's automobile insurance contract, albeit the Complaint lacks any assertions of fact identifying the contract or how GEICO breached it. *Id.* at ¶¶ 19-22.

B. <u>Legal Standards that Govern the Court's Exercise of Personal Jurisdiction</u>

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). "Personal jurisdiction is a separate and distinct requirement" from subject-matter jurisdiction, *Halim v. Donovan*, 951 F. Supp.2d 201, 204 (D.D.C. 2013), and it is the plaintiffs' burden to establish personal jurisdiction, *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008) ("The plaintiffs have the burden of establishing the court's personal jurisdiction over [the defendants]."). It is the general rule that the plaintiff must make at least a prima facie showing of the pertinent jurisdictional facts unless the trial court holds an evidentiary hearing. *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988) (noting that conclusory statements do not constitute the necessary prima facie showing to establish personal jurisdiction); *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir.

1991) (stating that plaintiffs "have the burden of proving personal jurisdiction, and can satisfy that burden with a *prima facie* showing . . . unless the trial court holds an evidentiary hearing"). No such evidentiary hearing has been held in this case.

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." [2] *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). In this case, "the court's personal jurisdiction over nonresident defendants depends upon . . . the law of the District of Columbia, the application of which is subject to the constraints of constitutional due process." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002). Thus, "for personal jurisdiction in the District Court for the District of Columbia to be proper, [the defendants] must be covered by the District of Columbia's long-arm statute." *I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d 1184, 1191 (D.C. Cir. 2003). The District of Columbia long-arm statute states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's --
>
> > (1) transacting any business in the District of Columbia;
> >
> > (2) contracting to supply services in the District of Columbia;
> >
> > (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> >
> > (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

---

[2] "[N]o federal long-arm statute applies." *Edmond*, 949 F.2d at 424.

--5--

> (5) having an interest in, using, or possessing real property in the District of Columbia;
>
> (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or
>
> (7) marital or parent and child relationship in the District of Columbia[.]³

D.C. Code § 13-423(a); *accord World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1168 (D.C. Cir. 2002). Importantly, the District of Columbia long-arm statute goes on to state that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *Id.* at § 13-423(b).

"Even when the literal terms of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause. In other words, a plaintiff must show 'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media Servs. Inc.*, 199 F.3d at 1347 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Under the 'minimum contracts' standard, courts must insure that 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

---

³ The marital provision contains several subparagraphs describing conditions that limit jurisdiction under that provision, none of which are relevant here, so they are omitted from the quotation. *See* D.C. Code § 13-423(a)(7)(A-D) (identifying conditions that apply).

--6--

C. <u>Analysis</u>

The plaintiffs' response to the Becks' motion to dismiss demonstrates to the Court that they do not understand the distinction between federal subject matter jurisdiction and personal jurisdiction, both of which must be established before this Court may preside over the merits of a case, *see Ruhrgas AG*, 526 U.S. at 577. For example, the plaintiffs first confront the motion to dismiss by arguing that it "is legally insufficient because [the defendants] purport[] to use Fed. R. Civ. P. 12(b)(2) as a judicial tool to attempt to dismiss Plaintiffs' actions" despite the diversity of the parties. Pls.' Opp'n to Mot. to Dismiss 5. That is, however, the very purpose of Fed. R. Civ. P. 12(b)(2), which permits a party to move for dismissal based on the defense of lack of personal jurisdiction. *See Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) (citing Fed. R. Civ. P. 12(b)(2) and stating that "lack of personal jurisdiction is an affirmative defense and so must be raised by the defendant"). The plaintiffs next argue that federal jurisdiction is derived exclusively from "Article III, Section 2, of the United States Constitution," *id.*, but it is well established that "[t]he validity of an order of a federal court depends upon that court's having jurisdiction <u>over both the subject matter and the parties</u>," *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) (emphasis added), and "[t]he requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause," *id.* at 702. The plaintiffs further "disagree" that they bear the burden to establish that the defendants have minimal contacts with the District of Columbia and assert that, instead, they "need only show that complete diversity exist[s] between the parties at the time of filing and that a case in controversy exceeds

$75,000.00." Pls.' Opp'n to Mot. to Dismiss 6.  The plaintiffs' reassertion of party diversity and the amount in controversy conflates subject matter jurisdiction with personal jurisdiction.

Even if the amount in controversy and diversity of citizenship establish subject-matter jurisdiction, the plaintiffs nevertheless bear the burden of demonstrating that this Court may exercise personal jurisdiction over the defendants.  *See FC Inv. Grp. LC*, 529 F.3d at 1091.  As already explained, in a case like this one, which involves subject-matter jurisdiction based on diversity of citizenship, the Court must look to District of Columbia law to determine whether personal jurisdiction over the Becks may be exercised.  *See Gorman*, 293 F.3d at 509.  Because the Beck's are not residents of the District of Columbia, the Court's exercise of personal jurisdiction over them is governed by the District of Columbia's long-arm statute.

In the Complaint, the plaintiffs concede that James Beck and Amy beck are both residents of Virginia, the vehicle collision occurred in Virginia, the alleged injuries occurred in Virginia, and the alleged negligence occurred in Virginia and involved violations of Virginia law.  Complaint ¶¶ 4, 6-14, 16-18, 22.  The plaintiffs asserted no facts indicating that any provision of the District of Columbia long-arm statute might apply.  The only provision of the long-arm statute that even comes close to applying is the fourth provision, which permits the exercise of personal jurisdiction when the defendant causes tortious injury in the District by an act or omission outside the District, but even this provision is qualified to require a demonstration that the defendant regularly conducts business in the District, engages in other persistent courses of conduct in the District, or derives substantial revenue from goods or services in the District.  D.C. Code § 13-423(a)(4).  The Complaint is devoid, however, of any allegations suggesting that the Becks regularly conduct business in the District of Columbia or

otherwise engage in conduct sufficient to fall within the fourth provision of the long-arm statute. Consequently, because no provision of the long-arm statute applies to permit this Court to exercise personal jurisdiction over the Becks, the Court concludes that dismissal of the Complaint against them is warranted.

## II. THE PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT

About four months after the Complaint was filed, but before the Court ruled on the Becks' motion to dismiss, the plaintiffs filed the pending Motion for Leave to File an Amend Complaint [sic], purportedly to "name[] additional causes of actions [sic] for Negligent Entrustment and Bad Faith." Pls.' Mot. for Leave to Amend 2. The plaintiffs argue that leave to amend should be granted because the plaintiffs' "new claims are supported by Defendant's behavior as alleged in the complaint, and Plaintiffs do not seek to add any additional facts." *Id.* The defendants oppose the motion on the grounds that, contrary to the plaintiffs' representation, the proposed amendments "elaborate on and provide for Plaintiffs to plead additional facts for their claims" and the defendants would suffer prejudice due to the untimeliness of the motion at this stage in the proceedings. GEICO's Opp'n to Mot. for Leave to Amend 2, 4. The defendants further argue that leave to amend should be denied because the new allegations would not survive a motion to dismiss and, therefore, are futile. *Id.* at 7.

A.  <u>Legal Standards that Apply to the Court's Determination of Whether to Grant Leave to Amend a Complaint</u>

As applied to this case, the relevant provision of Rule 15 of the Federal Rules of Civil Procedure mandates that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Rule 15(a) declares that leave to amend shall be freely given when justice so requires" and "this mandate is to be heeded." *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks omitted); *accord In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010). A district court may, however, exercise its discretion to deny a motion to amend when, for example, there has been undue delay, bad faith or dilatory motive on the movant's part, repeated failure to cure deficiencies via prior amendments, undue prejudice to the opposing party resulting from the amendment, or when the amended pleading would not survive a motion to dismiss. *Foman*, 371 U.S. at 183; *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d at 218. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

B.  Analysis

Although the plaintiffs concede that their proposed Amended Complaint "has named additional causes of actions [sic] for Negligent Entrustment and Bad Faith," Pls.' Reply In Support of Mot. to Amend 2 [ECF No. 13], the plaintiffs nonetheless claim that they "do not seek to add any additional facts," *id.*, and they urge the Court to view the proposed amendments to the Complaint as "improvements" that "add[] additional valid causes of actions [sic] that Defendants have adequate times [sic] to defend in a non-prejudicial way," *id.* at 5-6. As an initial matter, the plaintiffs' claim that the Amended Complaint does not add new facts is belied by even the most cursory comparison of the original Complaint to the Amended Complaint. Paragraphs 14-30, 36, 39, 41-43, 43-47 and 48-52 in the Amended Complaint consist of entirely new factual allegations that are wholly absent from the original Complaint. To summarize, the plaintiffs added an allegation of gross negligence in Count I, Amend. Compl. ¶ 36, added

punitive damages demands under Counts I and II, *id.* at 6, 8 (prayers for relief subparagraphs (a)), inserted a purported "statement of fact" that opaquely suggests the plaintiffs are attempting to convert the lawsuit into a class action, *id.* at ¶ 31, added an entirely new cause of action for breach of the covenant of good faith and fair dealing that seeks treble damages, *id.* at ¶¶ 42-47, and added an entirely new cause of action for negligent entrustment against Amy Beck, *id.* at ¶¶ 48-52. In light of the Court's holding that it lacks personal jurisdiction over the Becks, leave to amend the Complaint to add a punitive damages demand against James Beck and allegations against Amy Beck will be denied. Consequently, paragraphs 19-21 of the proposed Amended Complaint, as well as Counts I and IV, will be stricken.

Turning to the remainder of the Amended Complaint, GEICO opposes leave to amend on two principle grounds, the first of which is that GEICO will be prejudiced by the delayed introduction of new allegations that substantially change the theory of the case and would now require GEICO to marshal its defenses against accusations of fraud and collusion that were never hinted at in the original Complaint.[4] GEICO's Opp'n to Mot. to Amend 4-6. GEICO argues that the new allegations "put[] Defendant GEICO at a significant disadvantage as to their position and defenses in the case, as there was no notice from the original pleadings they would as need to defend themselves [sic], potentially even on a larger class-action scale, from the alleged collusion and fraud." *Id.* at 5. The record in this case reveals, however, that the litigation has not progressed so far that the delayed introduction of new causes of action, or the prejudice to GEICO, can be characterized as undue. At this stage, there have been no pretrial proceedings

---

4   This argument is covered in Parts A, B and D of GEICO's opposition brief and are addressed by the Court in a consolidated fashion because the essential elements of the arguments are intertwined, namely that GEICO will be prejudiced because the Amended Complaint belatedly adds new allegations that alter the theory of the case.

other than those related to the motions to dismiss and amend that are addressed herein. It also appears that, although the parties have propounded discovery requests -- or at least GEICO has propounded discovery requests on the plaintiffs, *id.* at 4 (stating that "[w]hile it is arguably still early on, discovery has been drafted and propounded upon Plaintiffs by Defendant GEICO") -- there otherwise is no indication in the record that discovery has progressed so far that, for example, witness depositions would need to be redone if leave to amend the Complaint was granted. This point also disposes of GEICO's claim that it will be prejudiced because the amendments substantially change the theory of the case by requiring GEICO to marshal its defenses against allegations of fraud and collusion that were never hinted at in the original Complaint.[5] *Id.* at 5. The proceedings simply have not advanced to a point where the delay and element of surprise are, either separately or in combination, sufficiently prejudicial to GEICO to warrant denying leave to amend and there has been no suggestion that the plaintiffs' request to amend is the product of bad faith or dilatory motive. *See Foman*, 371 U.S. at 182 (noting factors that might justify a court's decision not to heed Rule 15(a)'s mandate that leave to amend should be "freely given").

---

5     In support, GEICO cited *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971), for the proposition that "'[w]here the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation the court may deem it prejudicial." GEICO's Opp'n to Mot. to Amend 5. GEICO omitted to identify a pinpoint citation pointing to the location of that quotation in *Zenith Radio Corp.*, likely because the quotation does not appear anywhere in the decision. The correct citation for the quotation is actually 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed.1990). More importantly, *Zenith Radio Corp.* involved a situation in which a defendant moved to amend its answer to the complaint to add a defense a year after the trial occurred and after the court issued factual findings and conclusions of law. 401 U.S. at 327. In terms of prejudice, the facts in *Zenith Radio Corp.* easily distinguish it from the case at hand, which is still in the early and preliminary stages of pretrial proceedings with no significant discovery having yet transpired.

GEICO's other ground for opposing leave to amend is that amendment would be futile because "the Amended Complaint makes bald assertions that Defendant GEICO is operating in a fraudulent manner and its allegations are entirely speculative based upon settlements offered to Plaintiffs for damages." GEICO's Opp'n to Mot. to Amend at 7. To succeed on the merits of this theory, though, GEICO needed to fully brief its argument and, at a minimum, identify the elements of the cause(s) of action that GEICO contends the Amended Complaint fails to establish, including citations to the paragraphs in the Amended Complaint that GEICO asserts are "bald assertions" and "entirely speculative," *id.* As GEICO's argument stands,[6] it is so conclusory that the Court cannot assess the merits of it and, moreover, the Court is not inclined to do the parties' work for them. In the absence of an adequate presentation of the argument the Court will not embark on an evaluation of whether the challenged Amended Complaint would survive a motion to dismiss or not. The Court therefore will grant, in part, leave to amend but

---

[6] GEICO's entire argument relating to futility is as follows:

> Plaintiffs contend that their amendments would not be futile and therefore they are entitled to their amended complaint. "A district court may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss." *Hettinga v. United States*, 677 F. 3d 471, 480 (D.C. Cir. 2012) (citing *James Madison Ltd. By Hecht v. Ludwig*, 82 F. 2d 1085, 1099 (D.C. Cir. 1996)). In the instant case, the Amended Complaint makes bald assertions that Defendant GEICO is operating in a fraudulent manner and its allegations are entirely speculative based upon settlements offered to Plaintiffs for damages. These allegations would not survive a motion to dismiss as there is no basis for their fraud claims and thus the plaintiffs' Motion for Leave to Amend An Complaint (sic) should be denied.

GEICO's Opp'n to Mot. to Amend at 7.

--13--

GEICO will have the opportunity to respond to the Amended Complaint, whether by answer, motion to dismiss, or otherwise, pursuant to the schedule set forth in the accompanying order.

**CONCLUSION**

For the reasons set forth in this Memorandum Opinion, the Court will grant Defendant James Beck's and Amy Beck's Motion to Dismiss [ECF No. 8] and will grant in part but deny in part Plaintiffs' Motion for Leave to File An Amend Complaint [sic] [ECF No. 11]. An appropriate order will accompany this Memorandum Opinion.

March 19, 2014

                                                  Thomas F. Hogan
                                      Senior United States District Judge