**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**ANTONIO BARROS,** *et al.***,**

                **Plaintiffs,**

    **v.**                                      Civil Action No.  13-00669 (TFH)

**GOVERNMENT EMPLOYEES
INSURANCE COMPANY, INC.,**

                **Defendant.**

## MEMORANDUM OPINION

This is the second time the Court has been asked to determine the legal viability of this lawsuit. Antonio Barros and Jeffrey Styles (collectively "the plaintiffs") allege in their Amended Complaint that Government Employees Insurance Company, Inc. ("GEICO" or "the defendant")[1] breached an insurance contract and implied covenant of good faith by failing to adequately compensate the plaintiffs for injuries and damages they incurred in a vehicle collision.[2] Pending before the Court are (1) Defendant GEICO's Motion to Dismiss Plaintiffs' Amended Complaint [ECF No. 19] and (2) a Motion for Order of Default [ECF No. 17] that was filed by the plaintiffs. Upon consideration of both motions, the oppositions and replies thereto,

---

[1]     The original complaint identified the defendant as Government Employees Insurance Company, Inc., Compl. 1 [ECF No. 1], whereas the Amended Complaint identifies the defendant solely by the acronym GEICO, Am. Compl. 1 [ECF No. 16].

[2]     Pursuant to a Memorandum Opinion issued by the Court on March 19, 2014, paragraphs 19-21 of the Amended Complaint have been stricken and all claims against defendants James Beck and Amy Beck -- *i.e.*, Counts I and IV -- have been dismissed. Mem. Op. 9, 11, 14 (Mar. 19, 2014) [ECF No. 14].

and the entire record of this case, and for the reasons set forth below, the Court will grant Defendant GEICO's Motion to Dismiss Plaintiffs' Amended Complaint and deny the Motion for Order of Default.

## BACKGROUND AND PROCEDURAL POSTURE

According to the allegations in the Amended Complaint, this lawsuit stems from a vehicle collision that occurred on or about December 10, 2012, in Fairfax, Virginia. Am. Compl. ¶¶ 6, 7. Antonio Barros reportedly was driving his vehicle westbound when a vehicle driven by James Beck, who was under the influence of alcohol, made an interfering left turn and caused a collision. *Id.* at ¶¶ 6, 7, 10. Although the Amended Complaint fails to so state, it can be inferred from the allegations that the plaintiffs are asserting that Jeffrey Styles was a passenger in Barros' vehicle at the time of the accident.[3] *Id.* at ¶¶ 8, 9. As a result of the collision, both plaintiffs claim to have suffered injuries and lost wages for which they seek a total of about $4 million in compensatory, punitive and other damages. *Id.* at ¶¶ 8, 9, 23, 24, 25, 26.

The plaintiffs contend that GECIO insured both of the vehicles that were involved in the collision but the insurance policy covering the vehicle driven by James Beck[4] had a liability limit in the amount of only $20,000. *Id.* at ¶ 17, 26, 27, 28, 38. Antonio Barros' insurance policy, on the other hand, allegedly contained a provision that provided protection from underinsured

---

[3]  Indeed, in their legal brief opposing the defendants' motion to dismiss, the plaintiffs argue that "[p]laintiff Styles . . . was clearly identified on the police report as the passenger in [p]laintiff Barros' vehicle . . . ." Pls.' Opp'n to Def. GEICO's Mot. to Dismiss Am. Compl. 2. GEICO, however, correctly points out that "there are no facts asserted in the Complaint that actually place [Jeffrey Styles] in a vehicle at the time of the accident." Def.'s Mem. of P. & A. 6.

[4]  James Beck's wife, Amy Beck, appears to be the insured of the insurance policy that covered the vehicle James Beck was driving. Am. Compl. ¶¶ 27, 28, 52. For convenience, however, the Court will refer to this policy as "James Beck's policy."

motorists in the amount of up to $100,000. *Id.* at ¶¶ 27, 28. The Amended Complaint states, however, that the underinsured-motorist provision in Antonio Barros' insurance policy "does not take effect until GEICO agrees that damages exceed" James Beck's policy limit. *Id.* at ¶ 28.

While the Amended Complaint is not entirely clear, it appears to allege that, because the plaintiffs suffered damages totaling more than $20,000 -- which would exceed James Beck's policy limit -- GEICO is now obligated to compensate them pursuant to the underinsured-motorist provision in Antonio Barros' insurance policy, and the failure to do so is a breach. *Id.* at ¶¶ 24, 25, 39, 40, 41, 43. GEICO counters by asserting that the underinsured-motorist provision in Antonio Barros' insurance policy "is not triggered" until the plaintiffs first obtain a judgment or settlement that exhausts the liability limits that apply to James Beck's insurance policy. Def. GEICO's Mem. of Grounds & A. In Support of Mot. to Dismiss Pls.' Am. Compl. 3 [ECF No. 19-1] (hereinafter cited as "Def.'s Mem. of P. & A."). According to GEICO, this is a condition precedent that cannot be satisfied because James Beck and Amy Beck were dismissed from this lawsuit for lack of personal jurisdiction. *Id.* at 5. GEICO further argues that the plaintiffs' Amended Complaint fails to state claims for relief. *Id.* at 6-8. GEICO therefore requests that the Court dismiss the plaintiffs' Amended Complaint. *Id.* at 8.

Because GEICO's motion to dismiss the Amended Complaint was filed late, the plaintiffs moved for an "order of default." Mot. for Order of Default ¶¶ 8, 9 [ECF No. 17]. The plaintiffs characterize GEICO's tardiness as willful and argue that they are prejudiced by the delay. Reply to Def.'s Opp'n to Pls.' Mot. for Order of Default 2-4 [ECF No. 20]. Although GEICO admits filing late, GEICO opposes the entry of default because no cause of action has been properly pleaded by the plaintiffs and the delay did not prejudice the plaintiffs given that this case is in the

early stages of litigation.  Def. GEICO's Opp'n to Pls.' Mot. for Order of Default 3-5 [ECF No. 18].

## DEFENDANT GEICO'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

### I.     Standard of Review

Turning first to GEICO's motion to dismiss the Amended Complaint, Rule 8 of the Federal Rules of Civil Procedure mandates that a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  "Under the Supreme Court's rearticulation of pleading requirements in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

Consistent with these principles, the Court employs a two-prong approach to consideration of whether a complaint's dismissal is warranted.  *Iqbal*, 556 U.S. at 679.  First, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.*  As the Supreme Court has explained, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Second, after identifying any well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Allegations are plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court's evaluation of the complaint to determine whether it states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**II.     Analysis**

   A.     Cause of Action for Breach of Contract

Count II of the Amended Complaint advances a claim against GEICO for breach of contract. Am. Compl. ¶¶ 37-47. To state a claim for breach of contract, the plaintiffs must allege a contractual duty that GEICO failed to perform, among other required elements.[5] *See, e.g.*, *Ihebereme v. Capital One, N.A.*, 730 F. Supp.2d 40, 47 (D.D.C. 2010) ("In the case of a claim for breach of contract, the complaint must allege four necessary elements in order to effect fair notice: '(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" (quoting *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)); *Logan v. LaSalle Bank Nat'l Ass'n*, 80

---

[5]    The Court notes that neither party identified the law that they believe applies to the interpretation of Antonio Barros's insurance policy. Because both parties cited District of Columbia federal and local cases in their legal briefs, the Court deems the parties to assume that District of Columbia law applies to the interpretation of any contract GEICO entered into with Antonio Barros; accordingly, the Court "will proceed on the same assumption." *Maljack Prods., Inc. v. Motion Picture Ass'n of America, Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995) (adopting the assumption of the parties and the district court about what law applied to a contract).

A.3d 1014, 1023 (D.C. 2013). "Obviously, one cannot breach a contract without breaching a particular obligation created under the contract . . . ." *Ihebereme*, 730 F. Supp.2d at 47.

In this case, the Amended Complaint is devoid of any facts indicating that a contract between GEICO and Antonio Barros sets forth a duty that GEICO has failed to perform. The only allegations contained in the Amended Complaint that are relevant to the elements of a breach-of-contract claim consist of the following, most of which constitute legal conclusions that are not entitled to an assumption of truth:[6]

- "Defendant Geico[7] entered into a contractual relationship with Plaintiff Antonio Barros through the enactment of an automobile policy which is referenced by An active policy [sic]." Am. Compl. ¶ 15.

- "Plaintiff Antonio Barros detrimentally relied on Defendant Geico to provide uninsured/underinsured coverage if and when it was appropriate and in accordance with the contract/policy." *Id.* at ¶ 16.

- "Plaintiff Antonio Barros also carried uninsured/underinsured coverage with Defendant Geico." *Id.* at ¶ 17.

- "Defendant GEICO insures . . . Plaintiff Antonio Barros." *Id.* at ¶ 27.

- "Plaintiff Antonio Barros' policy limit is $100,000 but does not take effect until GEICO agrees that damages exceed the policy limit of Defendants James Beck and Amy Beck's policy so if GEICO forces a settlement below Defendants James Beck and Amy Beck's policy limit, then Plaintiff Antonio Barros' policy never has to pay on the claim." *Id.* at ¶ 28.

- "That the Plaintiff, Antonio Barros has a contractual relationship with GEICO by virtue of being insured with GEICO and has Uninsured/Underinsured coverage limits of $100,000.00, and Plaintiff Antonio Barros has been insured with GEICO since 1995 and has paid substantial premiums to GEICO over that last 18 years

---

[6] "Although in reviewing the dismissal of a complaint the court, as it must, takes 'all the factual allegations in the complaint as true,' the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1137 (D.C. Cir. 2002) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[7] Throughout the Amended Complaint the defendant is referred to as both "Geico" and "GEICO." *Compare* Am. Compl. ¶16, *with id.* at ¶ 27.

with the expectation that should he ever be in an accident and the driver at fault not have sufficient insurance coverage to pay for Plaintiff Antonio Barros' damages, that GEICO would provide a safety net under the policy that Plaintiff Antonio Barros bought from GEICO as that was always the sales pitch GEICO used with Plaintiff Antonio Barros and uses with its policy holders generally." *Id.* at ¶ 39.

- "Defendant GEICO made an absurdly low settlement offer that was a fraction of the verifiable costs of each Plaintiff in an effort to prevent the Defendant Amy Beck and James Beck's policy limits from being exceeded so that GEICO would not have to pay out a claim under Plaintiff Antonio Barros' policy which has a limit of $100,000, and in an effort to coerce Plaintiffs to recover from a substantial loss of wages and numerous doctors' bills." *Id.* at ¶ 42.

- "GEICO has failed to promptly cover doctors' bills and other costs, claims, liabilities, and/or damages covered by Plaintiff Antonio Barros' insurance policy in breach of its contract . . . ." *Id.* at ¶ 43.

Noticeably absent from these allegations is any fact identifying a duty set forth in Antonio Barros's contract that GEICO is required, and failed, to perform. At best, the allegations suggest that GEICO's claims adjusters are engaged in an internal conspiracy to offer what the plaintiffs subjectively characterize as an "absurdly low" settlement offer under James Beck's insurance policy. *Id.* at ¶¶ 26, 28, 29, 30. There are no allegations, however, from which the Court could infer that a low settlement offer presented under James Beck's insurance policy constitutes a breach of a duty that is set forth in a contract with Antonio Barros. There also is no allegation from which the Court could infer that the plaintiffs cannot simply reject such an offer and file suit against James Beck, Amy Beck and/or GEICO in the proper jurisdiction to recover whatever damages they believe they are legally entitled under James Beck's policy.[8] Regardless, the compensation that the plaintiffs are due under James Beck's policy is not the subject of this

---

[8]    The Amended Complaint states that both plaintiffs are practicing attorneys who "are members of both Federal Bars and local Bars and have been practicing law in the Washington, DC area for approximately 20 years," Am. Compl. ¶ 22, so they should be well equipped to exercise whatever legal rights they feel are available to them.

--8--

lawsuit, which alleges a breach of Antonio Barros's contract.  And it is a challenge to infer much of anything about Antonio Barros's contract because, with the exception of mere references to the existence of an underinsured-motorist provision in the amount of $100,000, the Amended Complaint fails to allege a single fact or contract provision that sets forth GEICO's duty to perform, in which case dismissal is warranted.

Dismissal also is inescapable in light of the Amended Complaint's allegation that Antonio Barros's insurance policy "does not take effect until GEICO agrees that damages exceed the policy limit of Defendants James Beck and Amy Beck's policy" and, further, if there is a settlement that falls below the liability limit of James Beck's policy, then GEICO "never has to pay on the claim" under Antonio Barros's contract. *Id.* at ¶ 28.  In other words, the plaintiffs concede that GEICO has no duty to pay a claim under Antonio Barros's contract until the liability limit that applies to James Beck's insurance policy is exhausted.  This is consistent with GEICO's contention, which was never refuted by the plaintiffs, that the underinsured motorist provision in Antonio Barros's contract states:[9]

---

[9]   GEICO filed a document titled "Automobile Policy Amendment: Underinsured Motorists Coverage" as an exhibit to its legal brief opposing the plaintiffs' motion for a default judgment and claims that this document is the "policy from which the plaintiffs seek to recover . . . ." Def. GEICO's Opp'n to Pls.' Mot. for Order of Default 4 [ECF No. 18]; *id.* at Ex. 1.  The plaintiffs disputed neither the accuracy nor the authenticity of the document, so the Court will deem it to be evidence of the underinsured-motorist policy referenced by Antonio Barros in the Amended Complaint.  Moreover, because the underinsured-motorist policy is referred to in the Amended Complaint and is central to the claims contained therein, the Court's evaluation of the policy does not implicate Rule 12(b)(6)'s mandate that consideration of documents outside the pleadings requires the Court to convert a motion to dismiss to one for summary judgment.  *See*, *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (stating that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim"); *accord*

> We will also pay damages the insured is legally entitled to recover for bodily injury caused by accident and arising out of the ownership, maintenance or use of an underinsured motor vehicle. However, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements.

Def. GEICO's Reply to Pls.' Opp'n to Mot. to Dismiss Pls.' Am. Compl. 2-3 [ECF No. 22]; Def. GEICO's Opp'n to Pls.' Mot. for Order of Default Ex. 1 [ECF No. 18-1]. Consequently, GEICO has no contractual duty to pay damages to either plaintiff in accordance with the terms of Antonio Barros's underinsured-motorist policy until "all bodily injury liability insurance available has been exhausted by payment of judgments or settlements" under James Beck's policy. Def. GEICO's Opp'n to Pls.' Mot. for Order of Default Ex. 1 [ECF No. 18-1].

In their legal briefs, the parties dispute whether a Maryland case, *Erie Insurance Exchange v. Heffernan, II*, 925 A.2d 636 (Md. 2007), defeats GEICO's argument that the plaintiffs must obtain a judgment or settlement that exhausts James Beck's policy before recovering underinsured-motorist benefits from Antonio Barros's contract. Def.'s Mem. of P. & A. 4-5; Pls.' Opp'n to Def. GEICO's Mot. to Dismiss Am. Compl. 6-7. GEICO first identified the case as contradictory to its argument that, "[a]lthough there appears to be no law in the District of Columbia on point, decisions from neighboring jurisdictions provide that an insured must first obtain a judgment against the tortfeasor before he or she can recover underinsured motorist benefits from the insurer." Def.'s Mem. of P. & A. 4. The plaintiffs then seized on this case as authoritative "[b]ecause there is no DC law on point" so "this Court will look to Maryland law." Pls.' Opp'n to Def. GEICO's Mot. to Dismiss Am. Compl. 6-7.

---

*Dick v. Holder*, ___ F. Supp.3d ___ (D.D.C. Sept. 10, 2014); *Bertram v. WFI Stadium, Inc.*, 41 A.3d 1239, 1242 n.3 (D.C. 2012).

The parties are incorrect that there is no District of Columbia law on point. It is well established that, under District of Columbia law, the express terms of a contract control and will be enforced as written unless there is an ambiguity, the terms violate a statute or public policy, or there is fraud, duress, or mutual mistake. *Smalls v. State Farm Mut. Auto. Ins. Co.*, 678 A.2d 32, 35 (D.C. 1996) (explaining that "[w]hen . . . contracts are clear and unambiguous, they will be enforced by the courts as written, so long as they do not violate a statute or public policy" (internal quotation marks omitted)); *Abdelrhman v. Ackerman*, 76 A.3d 883, 888 (D.C. 2013) ("This jurisdiction has long employed an objective law of contracts, meaning that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake" (internal quotation marks and citations omitted)). Neither party claims that the terms of the underinsured-motorist provision in Antonio Barros's contract are ambiguous, violate an applicable statute or public policy, or otherwise involve fraud, duress or mutual mistake.

Furthermore, there is no need for this Court to look to Maryland law for guidance because applicable District of Columbia precedents, namely *Conteh v. Allstate Insurance Company*, 782 A.2d 748 (D.C. 2001), and *Macci v. Allstate Insurance Company*, 917 A.2d 634 (D.C. 2007), stand for the proposition that District of Columbia courts will enforce insurance policy terms that require an insured to obtain a judgment against a tortfeasor before recovering against an insurer. The plaintiffs in both *Conteh* and *Macci* were injured in accidents involving uninsured motorists and ultimately sued their insurers for breach of contract for failing to pay

damages in accordance with uninsured-motorist protections provided in the plaintiffs' own automobile-insurance policies. *Conteh*, 782 A.2d at 749; *Macci*, 917 A.2d at 635. The automobile-insurance policies at issue in both *Conteh* and *Macci* expressly incorporated a Virginia statute that Virginia courts had interpreted to mean that an insured was required to obtain a judgment against a tortfeasor before seeking to obtain the benefits of uninsured-motorist protection provided by the policies. *Conteh*, 782 A.2d at 751; *Macci*, 917 A.2d at 636. In both cases, the D.C. Court of Appeals enforced the insurance policies according to their express terms, including the incorporated Virginia statute requiring the insureds to obtain judgments against tortfeasors as a condition precedent to the recovery of contract damages from the insurers. *Conteh*, 782 A.2d at 751; *Macci*, 917 A.2d at 636. Thus, in *Conteh*, the D.C. Court of Appeals concluded that "there is no legal right, under [the Virginia statute] *and the [insurance] policy which incorporates it*, to recover uninsured motorist benefits from the carrier until the liability of the uninsured motorist has been judicially established." 782 A.2d at 751-52 (emphasis added). Likewise, in *Macci*, the D.C. Court of Appeals noted that "[w]ithout a judgment determining [the tortfeasors'] legal liability, [the plaintiff] had not fulfilled a condition precedent to recovery *under the express terms of the insurance policy*" and, "[a]s a result, she was not in a position to bring a claim against [the insurer]." 917 A.2d at 636 (emphasis added).

      The Court presumes that the parties overlooked these two cases because the D.C. Court of Appeals' discussions about the interpretation of the Virginia statute could, upon a glance, leave the impression that the decisions rested on Virginia law. In actuality, though, a careful reading of both *Conteh* and *Macci* leaves no room for doubt that the D.C. Court of Appeals enforced the contracts based on their express terms, as is the law in the District of Columbia, *see*

*Abdelrhman*, 76 A.3d at 888.  It was happenstance that the terms included provisions incorporating the Virginia statute, thereby necessitating a discussion about the statute's interpretation.  As applied to the instant case, both *Conteh* and *Macci* compel this Court to enforce Antonio Barros's contract in accordance with its express terms, which include the condition precedent requiring the plaintiffs to exhaust the liability limits of James Beck's insurance policy via the payment of "judgments or settlements" before GEICO has any obligation to compensate them pursuant to the underinsured-motorist provision.

To summarize, there is no dispute that the express terms of the underinsured-motorist provision contained in Antonio Barros's contract clearly state that GEICO "will not pay" damages for bodily injury arising out of the use of an underinsured motor vehicle "until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements."  Def. GEICO's Reply to Pls.' Opp'n to Mot. to Dismiss Pls.' Am. Compl. 2-3; Def. GEICO's Opp'n to Pls.' Mot. for Order of Default Ex. 1.  Because there has been no allegation that the underinsured-motorist provision is ambiguous, violates a statute or policy, or otherwise involves fraud, duress or mutual mistake, the provision will be enforced as written.  *Smalls*, 678 A.2d at 35.  As a result, GEICO has no duty to pay damages pursuant to the provision until the plaintiffs have first exhausted all bodily injury liability available under James Beck's insurance policy.  Given that the Amended Complaint contains no allegation indicating that the exhaustion of liability under James Beck's policy has occurred, no breach of contract has been properly stated against GEICO, so Count II will be dismissed.[10]

---

[10] In their brief opposing dismissal, the plaintiffs seek to recast their cause of action as a breach of contract by anticipatory repudiation.  Pls.' Opp'n to Def. Geico's Mot. to Dismiss Am. Compl. 8 (asserting that the plaintiffs have a "right to allege anticipatory breach").  There is no allegation in the Amended Complaint, though, that indicates GEICO unequivocally and

B.  Cause of Action for Bad Faith

"Under District of Columbia law, every contract contains within it an implied covenant of both parties to act in good faith and damages may be recovered for its breach as part of a contract action." *Choharis v. State Farm Fire and Cas. Co.*, 961 A.2d 1080, 1087 (D.C. 2008). "[A] a party to a contract may be liable for a breach of the duty of good faith and fair dealing if the party evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 321 (D.C. 2008). At this juncture, GEICO's duty to pay pursuant to the underinsured-motorist provision in Antonio Barros's insurance policy has not materialized because the plaintiffs have not complied with the terms of the contract by first exhausting the liability limits of James Beck's insurance policy. GEICO cannot be deemed to be acting in bad faith by refusing to pay the plaintiffs when GEICO has been divested of that obligation by the plaintiffs' own failure to perform according to the contract's terms. There being no allegations in the Amended Complaint from which the Court can infer that GEICO is evading the spirit of the contract, willfully rendering imperfect performance, or interfering with performance by the plaintiffs, dismissal of the cause of action for bad faith, which is Count III, will be granted.

---

positively communicated its intention not to perform Antonio Barros's contract. *Order of AHEPA v. Travel Consultants, Inc.*, 367 A.2d 119, 125 (D.C. 1976) ("For a repudiation of a contract by one party to be sufficient to give the other party the right to recover for breach, the repudiating party must have communicated, by word or conduct, unequivocally and positively its intention not to perform."). The Amended Complaint contains no allegations that GEICO intends not to comply with Antonio Barros's underinsured-motorist provision once the liability limit of James Beck's automobile insurance policy has been exhausted. Put another way, the plaintiffs have not alleged that GEICO will not perform when its contractual obligations are actually due.

## THE PLAINTIFFS' MOTION FOR ORDER OF DEFAULT

The plaintiffs moved the Court enter an "order of default" pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Because the plaintiffs requested entry of an "order of default" versus a "default judgment," Mot. for Order of Default at ¶ 9, and there has been no entry of default by the Clerk of the Court upon which a "default judgment" could be premised, the Court assumes that the plaintiffs are seeking to have the Court order the Clerk of the Court to enter a default. The plaintiffs argue that the entry of default is warranted on the ground that GEICO failed to timely respond to the Amended Complaint. *Id.* at ¶ 9.

In this jurisdiction, "strong policies favor resolution of disputes on their merits." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980). Consistent with this principle, the Federal Rules of Civil Procedure provide that a default may be set aside if "good cause" has been shown for the failure to plead or defend. *See* Fed. R. Civ. P. 55(c). Stated conversely, entry of default may not be appropriate when good cause for the failure has been shown. Accordingly, the Court will not order the Clerk of the Court to enter default if GEICO has demonstrated good cause for failing to respond to the plaintiffs' Amended Complaint. To determine whether good cause exists to refuse entry of default, the Court must exercise its sound discretion and consider (1) whether the default was willful, (2) whether the Court's refusal to order the entry of default would prejudice

the plaintiff,[11] and (3) whether the defense is "meritorious."  *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 373 (D.C. Cir. 1980).

GEICO concedes that a response to the Amended Complaint was filed late but urges that the delay was an oversight, the product of travel, and not willful.  Def. GEICO's Opp'n to Pls.' Mot. for Order of Default 3.  As GEICO points out, the facts that it "filed a timely Answer to the original Complaint, issued discovery requests, and participated in a conference call with the pro se plaintiffs within days after the Court issued its March 19, 2014 Order" are evidence that GEICO has been "actively engaged in this case since its commencement and [is] prepared fully to defend against the plaintiffs' allegations."  *Id.*  GEICO also filed a motion to dismiss the Amended Complaint within days of receiving notice of the plaintiffs' Motion for Order of Default.

Assessing the applicable factors, the Court need not determine whether GEICO's failure to timely respond to the Amended Complaint was willful because the other two factors weigh so heavily in favor of declining to order the entry of default that the Court would deny the plaintiffs' motion even if willfulness was shown.  The Court finds, as laid out in the analysis of GEICO's motion to dismiss, that GEICO has more than demonstrated a meritorious defense and there is no prejudice to the plaintiffs because this litigation is in such an early stage of proceedings.  Because good cause has been shown to refuse the entry of default, the Court will deny the plaintiffs' Motion for Order of Default.

---

[11]  This factor is usually phrased in terms of "setting aside" an entered default.  *See*, *e.g.*, *Mohamad v. Rajoub*, 634 F.3d 604, 606 (D.C. Cir. 2011) (stating that "[i]n exercising its discretion, the district court is supposed to consider whether . . . a set-aside would prejudice plaintiff" (internal quotation marks omitted)).  Because no default has yet been entered, the Court will simply evaluate whether the refusal to enter default would prejudice the plaintiffs.

## CONCLUSION

    For all the foregoing reasons, the Court will grant Defendant GEICO's Motion to Dismiss Plaintiffs' Amended Complaint [ECF No. 19] and deny the plaintiffs' Motion for Order of Default [ECF No. 17].  An appropriate order will accompany this opinion.

February 2, 2015

                                                       Thomas F. Hogan
                                                  Senior United States District Judge